# CAROLINE C. GOULD

v.

# THE ELGIN CITY BANKING COMPANY ET AL.

*Practice—Proceedings before a Master—Continuance—Mortgage—Release—Evidence.*

1. After a master has made his report, a motion by a party who, though notified, persistently neglected to appear before him to refer the cause back, is properly denied.

2. Nor has a party under such circumstances the right to make his defense before the court.

3. A master's report, to which no exceptions have been filed, is conclusive against the parties upon the facts found and conclusions stated.

4. Refusal to continue a cause on account of the absence of counsel is not error.

5. The evidence in this case, held, not to establish a parol agreement to release a mortgage.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Mr. J. W. RANSTEAD, for appellant.

Messrs. SHERWOOD & JONES, for appellees.

C. B. SMITH, J.  This was a bill filed against Caroline C. Gould and her husband, C. W. Gould, to foreclose a deed of trust given by Charles W. Gould to I. C. Bosworth, trustee for the bank, to secure two notes executed by C. W. Gould, one for $2,200 dated January 2, 1882, and also signed by Edmund Hugg, and one for $4,000 which was also signed by Robert McAdam, dated February 6, 1882. The trust deed was dated the 2d day of September, 1884. The trust deed covered what was, and is, called W. C. Gould's Spring street property in Elgin, and a certain cheese factory property in

the city of St. Charles.    At the time the trust deed was given, C. W. Gould occupied the Spring street property as a homestead and the St. Charles cheese factory was owned jointly by C. W. Gould and D. E. Moon.    At the time this trust deed was executed, Gould was not married, or then had no wife living.

In addition to the property described in this trust deed, Mr. Gould owned and operated some twelve or thirteen other cheese factories in Kane and adjoining counties, a large farm in Cook county, and a good many lots in the city of Elgin, but it seems to have been all mortgaged to the Elgin City Bank or the First National Bank of Elgin.    Mr. Gould's investments failed to prove remunerative and meet his financial necessities, and accordingly, in March, 1885, he made a general assignment of all his property to W. J. Hunter for the benefit of his creditors.    This assignment was, of course, subject to all these mortgages in favor of these two banks.

Mr. Gould kept his bank account with these two banks. When the assignment was made, it was supposed by all concerned that the estate would more than pay off all the debts and there be still something left for Mr. Gould, and the homestead could be saved.

C. W. Gould married appellant after the execution of the trust deed and before the assignment.    Whatever rights she had, therefore, in this homestead on Spring street, were subject to the trust deed.

C. W. Gould and his wife, the appellant here, filed their joint and several answers to the bill on the 7th of March, 1889.

In C. W. Gould's answer he claims large credits and payments on the notes described in the trust deed on account of moneys which the bank had received from the sale of some of his property, and also on account of rents received by the bank from the Cook county farm.    Mrs. Gould answered and claimed a parol release of the mortgage on the Spring street property, the homestead, for a valuable consideration, under and by virtue of an agreement with the officers of the bank, and she insisted that as to that part of the property described in the mortgage the bank was not entitled to a decree of foreclosure.

After filing her answer, Mrs. Gould also filed a cross-bill setting up the alleged parol agreement under which she claimed that the bank had released the mortgage, and prayed for a specific performance of that agreement and for a release of the mortgage on the homestead. The agreement set out in her answer and cross-bill and relied on for relief was, in substance, that Mr. Bosworth, representing the bank, had agreed with her that they would release the mortgage on the homestead in Spring street if she would, on her part, sign all deeds to all the remaining property of her husband which had been included in the assignment to Hunter, and which she did do in consideration of such promises.

The Banking Company filed its answer to the cross-bill denying that it made any such contract of release. Issues were joined on bill and cross-bill, and on the 7th of March, 1889, the cause on the original bill was referred to the master, who was directed to take proofs and report his conclusions to the court.

On the 11th of April following, the parties appeared before the master by their solicitors and commenced taking the proof.

The complainant introduced its notes and trust deed described in the bill. Alfred Bosworth, cashier of the First National Bank, was also examined by appellee, who swore he was also familiar with the accounts and books of appellee. He was examined by both parties touching the indebtedness of C. W. Gould to appellee, and went fully and in detail into the state of accounts and stated the account between Gould and the bank. This examination of Bosworth was upon the question made in Gould's answer that he owed but little, if anything, on these notes. Bosworth then agreed that Mr. Gould might employ an expert to examine the bank books. At this examination Harvey A. Jones appeared for Mr. and Mrs. Gould, and Mr. Sherwood for the bank. At the close of the examination on that day the bank rested its case. Mr. Jones was then requested to take the testimony for the defense as soon as possible, so the case might be heard at the April term. On the day of the first examination Mr. Jones

fixed the 1st day of May when he would proceed to take his testimony.

On the 13th of April Mr. Gould employed Judge Ranstead to assist Mr. Jones in the defense. Judge Ranstead at once entered upon the defense of the case and within two or three days thereafter he and Sherwood had agreed upon an expert to examine the books of the bank.

When the first of May came, neither Jones nor Ranstead appeared to take this evidence. On the 8th of May Mr. Sherwood wrote Jones, and on the 9th of May the master wrote him, both asking when he was fgoing on with the testimony, but no answer came to either of these letters. On the 20th of May the master fixed the 27th to proceed with the examination of the witnesses and notified Jones of the date. On the 24th of May, Jones met Sherwood and appealed for further time, saying that he was busy in court, and thereupon the 3d of June was agreed upon and Judge Ranstead notified of the time. On the 3d of June appellee's solicitor appeared before the master, but Mr. Jones still failed to appear. Judge Ranstead was there, but took no testimony nor offered to take any. The master then declared the proof closed and within a short time afterward notified Mr. Jones that he would present his report to the court on the 17th day of June.

On that day no exceptions had been filed to the master's report, and it was filed and appellee moved the court for its approval; appellant moved to have the cause referred back to the master to finish taking proof upon the original bill and to take proof on the cross-bill.

The court overruled the cross-motion to refer the case back to continue the evidence on the original bill, but gave appellant permission to produce her proofs on the cross-bill in open court, and set the cause for hearing on the cross-bill for the 20th of June.

On the 25th, Mrs. Gould moved the court for a continuance, on the ground of the absence of her solicitor, H. A. Jones. She set out in her affidavit that Mr. Jones had familiarized himself with her defense, and that he was also

familiar with the state of the transactions between C. W. Gould and the bank; that she had relied upon him to be present, and that his presence was necessary to a fair trial and investigation of the state of accounts between her husband and the bank, and that he could not attend on account of other pressing legal engagements in the preparation of cases in the Appellate Courts, and on account of being engaged in trials in other courts; but the court refused the motion to continue and compelled appellant to proceed with the trial. The chancellor thereupon heard all the evidence offered by either side in open court upon the cross-bill, and after full consideration, dismissed the cross-bill and rendered a decree of foreclosure on the original bill, for the amount found due by the master upon the notes described in the trust deed. From this decree Caroline A. Gould appeals to this court. She insists the court erred in refusing to refer the cause on the original bill back to the master, in refusing to grant her a continuance, and in dismissing her cross-bill and rendering a decree for complainants on the original bill.

We will notice these objections in the order named.

There was no error in refusing to refer the case back to the master after he had made his report, and especially so after the most ample and repeated opportunities had been offered appellant to take her testimony before the master. When a cause is referred to the master it is the duty of the parties to appear before him and take their proofs, and it is not a matter of right for them to decline or neglect so to do and then offer their proof in open court. Indeed the court has no power on the hearing of the cause to hear any evidence not offered before the master. Cox v. Pierce, 120 Ill. 556. The rule held in this case disposes of the third, fourth and seventh assignment of errors adversely to appellant, and Gould was properly refused the right to make his defense before the court which he refused or neglected to make before the master. Appellant's solicitors showed gross neglect and inattention in not keeping their appointments to take the proof.

But in addition to this they filed no exceptions to the mas-

ter's report, either before him or before the Circuit Court. Without such exceptions the master's report is conclusive against appellant and her husband upon the facts found and the conclusion stated, and there was therefore nothing to refer back to the master. Prince v. Cutler, 69 Ill. 267.

Nor was there any error in refusing to continue the case. It has been repeatedly held in this State that a refusal to continue a cause on account of the absence of counsel is not error. N. W. B. & Mut. Aid Ass'n v. Prim, 19 Ill. App. 224. And certainly not when there is competent associate counsel present assisting in the case, as was the fact here. But appellant lost nothing, so far as we can see, from a refusal of the court to continue the case. She was offered every opportunity to bring forward all her evidence, and if she failed it was her own neglect.

The principal contention, however, urged by appellant, is that the court erred in not decreeing her specific performance upon her cross-bill and canceling the mortgage. Appellant relied upon a parol agreement or understanding made between herself and officers and attorneys for the bank. After the assignment to Hunter of all Gould's real estate and property, it was thought advisable by all parties interested in converting the property into money, that Mr. Hunter should find individual private purchasers for these various factories, the lots and the farm, as soon as possible, and that he should make deeds to them with as little cost and expense as possible and save public sales, and apply the proceeds to the payment of these debts. Mrs. Gould had not joined in the deed of assignment, and when purchasers were found they refused to take the property unless Mrs. Gould joined in the conveyance. Thereupon Mr. Bosworth, representing both banks, went to Mrs. Gould's house and there had a conversation with her, and requested her to join in these deeds to purchasers as fast as they could be found. She first declined to sign the deeds, but she swears that when she positively refused so to do, that Mr. Bosworth then agreed with her that if she would sign these deeds for all her husband's property as purchasers were found, the bank would save her homestead

and release the mortgage on it, and that thereupon she signed the deeds and continued to do so until they were all signed.

Her husband, who was present on that occasion, swears that "The drift of the conversation between them was that if she would sign the deeds, they would save the homestead for her. He said it could be done and the homestead could be saved. After this talk she signed all the deeds they have there, and after that all the other property was sold."

Carl Botsford testified that he was a notary and went with Bosworth to Gould's house that evening, to take the acknowledgment.

He swears that Bosworth told her that by signing the deeds she would be more apt to save her home than by not signing them; that it would save expenses in foreclosing all the mortgages; that the bank undoubtedly had security enough to pay its claims without the homestead and that the homestead would be saved; but he says he has no recollection of hearing any promise by Bosworth to release or cancel the mortgage on the homestead, but he told her that her husband and Hunter had estimated the property at largely more than the debts, and he thought, himself, the homestead could be saved by making the property bring all it would and save expenses by selling at private sale, but that he thought the chance would be lost if she refused to sign the deeds; that he told her the bank would have to be paid in full, and that all expenses made in foreclosing, would, to that extent, help the bank's getting its pay without selling the homestead.

This was the substance of the proof, for and against the contract set up in the cross-bill. Waiving all questions of the statute of frauds, we think the evidence was not sufficient to justify the court in canceling the mortgage and ordering its release as to the homestead. Appellant's own husband, who heard the conversation, would not swear on direct examination that there was any agreement to release the homestead, but that Bosworth said it *could* be saved.

Botsford heard no promise or agreement to release it. Bosworth swears that he did not make any such promise. We think the appellant fails to establish her bill by a preponderance of the evidence.

Before a court will cancel a trust deed to secure $6,000, the proof ought to be clear and satisfactory, and especially so when such alleged agreement is based upon no real consideration whatever.

Mrs. Gould had no real interest or estate of any kind in any of this property. She was married to Mr. Gould after all these mortgages had been made and all his estate, save the bare equity of redemption, had been conveyed away. After her husband had so conveyed his homestead in this lot, she could not, by afterward becoming his wife, destroy the effect of that conveyance by claiming a homestead or dower.

Neither of these estates could attach to her until the mortgages were paid.

Some other questions are raised and argued but they are such as only affect the rights of appellant and her husband on the original bill, and, as we have seen, they have waived all these questions by not excepting to the master's report, nor offering evidence before him. The decree will be affirmed.

*Decree affirmed.*